UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY MOORE,

    Plaintiff,

v.                                           Case No. 09-CV-13342

ONEWEST BANK, F.S.B.,

    Defendant.
                                                     /

**OPINION AND ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT AND REMANDING THE REMAINING CLAIMS TO WAYNE COUNTY CIRCUIT COURT**

Pending before the court is a motion to dismiss or, alternatively, for summary judgment, filed on August 26, 2009, by Defendant OneWest Bank, F.S.B. Having reviewed the briefs, the court concludes a hearing on this motion is unnecessary. *See* E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendant's motion as to Counts I and III, and will remand Counts II, IV, V and VI to Wayne County Circuit Court.

**I. INTRODUCTION**

On July 30, 2009, Plaintiff Shirley Moore filed an action against OneWest Bank in Wayne County Circuit Court, for violation of the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1639 (Count I); predatory lending (Count II); violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, (Count III); fraudulent misrepresentation (Count IV); negligent misrepresentation (Count V); and violation of the Michigan Mortgage Brokers, Lenders, and Servicers Licensing Act

("MMBLSLA"), Mich. Comp. Laws § 445.1651, *et seq.*, (Count VI). Defendant removed the action to this court on August 24, 2009 based on federal question jurisdiction.

## II. BACKGROUND

Plaintiff purchased a home at 5250 Spokane, Detroit, Michigan, 48204 ("Property"), in 2003, for about $30,000. (Pl.'s Compl. ¶ 4,7.) She "made substantial improvements to the Property after purchasing it, and then financed the improvements with a loan from Defendant's predecessor in interest, non-party IndyMac." (*Id.* ¶ 8.) Plaintiff entered into the loan on October 11, 2004. The loan was for $50,250 due in full no later than November 1, 2034, and Plaintiff granted IndyMac a mortgage in the Property (Def.'s Ex. 2.)

The mortgage contained an Adjustable Rate Rider ("ARR") that listed the interest rate at 1%, followed by the statement, "The interest rate I will pay may change." (Pl.'s Ex. C.) Plaintiff initialed each page of the ARR. (Def.'s Ex. 2.) The ARR stated in all caps, "This note contains provisions that will change the interest rate and the monthly payment." (Pl.'s Ex. C.) The ARR goes on to state that the interest rate may change on the first of every month beginning on December 1, 2004 and the monthly payment may change on the first of every month beginning on December 1, 2005. (Def.'s Ex. 2.) The interest rate is capped at 9.95% and is calculated by adding 3.7% to an index based on United States Treasury Securities. (*Id.*) The ARR further stated, "My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments." (*Id.*) Any unpaid interest would be

added to principal. (*Id.*) The unpaid principal balance could not exceed 110% of the principal amount originally borrowed. (*Id.*) The ARR stated, "Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal . . . could cause my unpaid principal to exceed that maximum amount when interest rates increase." (*Id.*) If that occurred, then the monthly payment would be an amount "sufficient to repay my then unpaid principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month." (*Id.*)

Plaintiff signed a "Truth in Lending Disclosure Statement" on October 11, 2004. (Pl's Ex. B.) The statement listed Plaintiff's annual percentage rate as 5.57% and total payments as $105,960. (*Id.*) It further stated, "[T]his loan contains a variable rate feature. Disclosures about the variable rate feature were provided to you earlier." (*Id.*) Plaintiff's monthly payments were listed as $161.62 beginning on December 1, 2004, as $173.74 beginning on December 1, 2005, as $186.77 beginning on December 1, 2006, as $200.78 beginning on December 1, 2007, as $215.84 beginning on December 1, 2008, and as $315.66 beginning on December 1, 2009 and ending on October 1, 2034. (*Id.*) Plaintiff signed the form acknowledging receipt of the disclosure as well as "a copy of an Adjustable/Variable Rate Loan Program Disclosure along with a copy of *The Consumer Handbook on Adjustable Rate Mortgages* (CHARM Booklet)." (*Id.*)

Plaintiff takes issue with many aspects of the loan. First, Plaintiff argues that the loan was illegal because it was a negative amortization loan. (Pl.'s Compl. ¶ 11.) Second, Plaintiff argues that "the Truth in Lending Disclosure supplied by Defendant misleadingly listed these minimum payments and purported them to be fully-amortized

payments." (Id. ¶ 14.) In her affidavit, Plaintiff states, "I was never told the loan I was entering into was a negative amortization loan, or the fact that if I made the monthly payments in accordance with the statement sent by Defendant, my principal loan balance would increase." (Pl.'s Aff.¶ 5.) Third, Plaintiff argues that "the Adjustable Rate Rider to the Note erroneously listed the interest rate at 1.00%." (Pl.'s Compl. ¶ 15.) Fourth, Plaintiff argues that credit was extended to Plaintiff "without regard to her ability to repay the debt." (Id. ¶ 21.) Fifth, Plaintiff argues that she was "told the value of [her] home exceeded $70,000.00," which was a "materially false property value." (Pl.'s Aff.¶ 2; Pl.'s Compl. ¶ 40.) In her affidavit, Plaintiff states, "The reason I mortgage my property with Defendant One West was because of the representations made to me on October 11, 2004, by Ron Anderson, an agent of IndyMac Federal Bank, regarding the value of my property, and the amount I was to be charged monthly for my payment obligation." (Pl.'s Aff. ¶ 1.)

In its motion, Defendant argues that Plaintiff's complaint should be dismissed because her federal claims are barred by the statute of limitations, her predatory lending, negligent misrepresentation, and fraudulent misrepresentation claims are not pled with sufficient particularity, and the MMBLSLA does not apply to it. In addition, Defendant argues that it is not the proper plaintiff in this case because IndyMac was the originator of the mortgage.

### III. STANDARD[1]

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must put forth enough

---

[1] Both parties submitted and refer to material outside of the pleadings, including Plaintiff's affidavit attached to her response brief. Accordingly, the court will treat this motion as one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, 477 U.S. at 256). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment – the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

## IV. DISCUSSION

### A. Federal Claims - HOEPA (Count I) and TILA (Count III)[2]

Plaintiff alleges violations of two subsections of HOEPA, 15 U.S.C. § 1639. First, Plaintiff alleges Defendant violated 15 U.S.C. § 1639(h), which provides that:

---

[2] Defendant argues that because it was not involved in the origination of the loan, it is not liable under HOEPA and TILA. (Def.'s Mot. at 3-4.) Plaintiff argues that Defendant is liable as the originator's agent or assignee. (Pl.'s Resp. at 5-8.) Because the court finds that the claims are barred by the statute of limitations, it need not address whether Defendant can be liable as an agent or assignee.

> A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602(aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment.

15 U.S.C. § 1639(h).[3]  Second, Plaintiff alleges Defendant violated 15 U.S.C. § 1639(f), which provides that a § 1602(aa) mortgage "may not include terms under which the outstanding principal balance will increase at any time over the course of the loan because the regular periodic payments do not cover the full amount of interest due." *Id.* § 1639(f).

Plaintiff also alleges a violation of TILA, 15 U.S.C. § 1601, *et seq.*  TILA provides for statutory penalties if the creditor fails to make certain disclosures required under the statute.  "One of the primary purposes of the TILA is 'to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit.'" *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002) (quoting 15 U.S.C. § 1601(a)).  To accomplish this purpose, the statute empowers the Federal Reserve board through Regulation Z, 12 C.F.R. § 226, to require certain disclosures to consumers regarding the terms and costs of credit, including residential mortgage transactions.  *Inge*, 281 F.3d at 619. Plaintiff alleges Defendant violated TILA by providing "false interest rate, fee and/or

---

[3] Defendant argues that Plaintiff has not alleged any facts demonstrating a pattern or practice of Defendant making loans without regard to a borrower's ability to pay, and that instead, Plaintiff has only alleged this one instance.  Plaintiff does not respond to Defendant's argument, and one instance is insufficient to establish a pattern or practice.  *See* 15 U.S.C. § 1639(h).  Thus, Defendant's motion for summary judgment is granted as to Plaintiff's claim under 15 U.S.C. § 1639(h).

7

monthly payment disclosures." (Pl.'s Compl. ¶ 34.) In addition, Plaintiff alleges Defendant violated TILA by failing to "provide Plaintiff with a Notice of Right to Cancel." (Id. ¶ 37.)

Under both the HOEPA and TILA claims, Plaintiff has requested damages and rescission.

### 1. Damages Statute of Limitations

Defendant argues that the statute of limitations bars Plaintiff's claims under HOEPA and TILA. (Def.'s Mot. at 3-4.) In response, Plaintiff argues that the statutory period has not run, or in the alternative, that her claims are subject to equitable tolling. (Pl.'s Resp. at 8-11.)

TILA's one-year statute of limitations, located at 15 U.S.C. § 1640(e), also applies to HOEPA claims because HOEPA is an amendment to TILA. 15 U.S.C. §§ 1639, 1640(e). Section 1640(e) states: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year form the date of the occurrence of the violation." 15 U.S.C. § 1640(e). As a general rule, "the statute of limitations begins to run 'when the plaintiff has complete and present cause of action' and thus 'can file suit and obtain relief.'" *Wike v. Vertrue, Inc.*, 566 F.3d 590, 593 (6th Cir. 2009) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp of Cal., Inc.*, 522 U.S. 192, 201 (1997) (internal quotation marks omitted)). Plaintiff obtained the loan on October 11, 2004, and did not file the instant lawsuit until July 30, 2009. The statutory period has run, and therefore, damages based on Plaintiff's loan are barred. *See id.*

Plaintiff further argues that the doctrine of equitable tolling should bar the application of the statute of limitations to her claim. (Pl.'s Resp. at 5.) The Sixth Circuit has held that §1640(e) is subject to equitable tolling "'in appropriate circumstances, and that for application of the doctrine of fraudulent concealment, the limitations period runs from the date on which the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation.'" *Borg v. Chase Manhattan Bank USA, N.A.*, 247 F. App'x 627, 635 (6th Cir. 2007) (quoting *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1043 (6th Cir. 1984)). The Sixth Circuit has explained that to toll the limitations period on the basis of wrongful concealment, "a plaintiff must show '(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.'" *Hamilton County Bd. of Comm'rs v. NFL*, 491 F.3d 310, 315 (6th Cir. 2007) (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975)).

Plaintiff argues that equitable tolling should apply because there was fraudulent concealment. (Pl.'s Resp. at 10). However, Plaintiff does not explain why the facts of her case should receive the benefit of equitable tolling. Plaintiff fails to allege any wrongful concealment on the part of Defendant, or due diligence on her own part, to require the court to toll the statutory period. Plaintiff merely summarizes--at great length--non-binding caselaw. The sole basis of Plaintiff's argument regarding equitable tolling is that the Defendant committed fraud by "the issuing of a TILA disclosure

9

outlining Plaintiff's monthly payment obligation which in reality was substantially less than the fully amortized payment." (Pl.'s Resp. at 10.)  Assuming the disclosure statement was in fact misleading,[4] the fact that a disclosure contained a violation does not necessarily demonstrate active concealment on the part of Defendant.  In particular, Plaintiff was provided a monthly statement that listed the principal balance. (Pl.'s Ex. A, D.)  If this amount were increasing from month-to-month, Plaintiff would be able to see that by comparing the prior month's statement to the current month's statement.  The fact that Plaintiff could have easily determined that the payments may not be fully amortized weighs against a finding of fraudulent concealment.  *See Hamilton County Bd. of Comm'rs*, 491 F.3d at 315 (requiring due diligence by plaintiffs).  Also, it is undisputed that Plaintiff initialed the ARR page which states, "My monthly payment could be less than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid principal . . . . Because of my paying only limited monthly payments, the addition of unpaid interest to my unpaid principal . . . could cause my unpaid principal to exceed [110% of the principal borrowed] when interest rates increase."  (Def.'s Ex. 2.)  Thus, the ARR stated plainly that payments may not be fully amortized, which indicates that there was no concealment.  *See Hamilton County Bd. of Comm'rs*, 491 F.3d at 315.  In addition, Plaintiff's argument for tolling the statute

---

[4] Nowhere on the TILA disclosure does it say the payments listed were fully amortized.  The TILA disclosure was based on a 5.57% interest rate, but the TILA disclosure specifically stated that the loan was subject to a variable interest rate. (Pl.'s Ex. B.)  Because the disclosure statement listed the interest rate as variable, it would seem unreasonable to view those payments as fully amortized if the interest rate changed.

of limitations would render the statute of limitations superfluous.  Plaintiff alleges a TILA violation based on a disclosure statement that is seriously misleading.  Plaintiff argues that the statute of limitations should be tolled for this same reason, that the disclosure statement is seriously misleading.  Adopting Plaintiff's rationale, the statute of limitations would never apply as Plaintiff is arguing that the violation itself tolls the statute of limitations.

Plaintiff also argues that she could not have ascertained "the extent of Defendant's illegal lending practices until she sought legal advice." (Pl.'s Resp. at 10.) Based on this reasoning, though, if Plaintiff would have waited until 2034 (the last year payments were due) to visit a lawyer, who in turn informed her of potential TILA and HOEPA violations, then the statute of limitations on her TILA and HOEPA claims would have been tolled for 30 years.  This is an absurd result, especially given that had Plaintiff sought legal advice at the beginning of the loan, she could have been informed of any potential violations then.  It would be anomalous to base the tolling of the statute of limitations on the timing of a plaintiff's decision to seek legal advice.  The doctrine of equitable tolling requires due diligence of the part of the Plaintiff.  *See Hamilton County Bd. of Comm'rs*, 491 F.3d at 315.  Plaintiff has not pointed to any facts demonstrating due diligence.  Because Plaintiff's claim is time-barred and the doctrine of equitable tolling does not apply, the court will grant Defendant's motion for summary judgment as to Plaintiff's TILA and HOEPA claims for damages.[5]

---

[5] Plaintiff argues that equitable tolling issues are not appropriate at the Rule 12(b)(6) stage because they depend on matters outside of the pleadings. (Pl.'s Mot. at 8 (citing *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003-04 (9th Cir. 2006))).

### 2. Rescission Statute of Limitations

In addition to damages, Plaintiff has requested that the court grant her relief in the form of rescission. When a plaintiff requests relief in the form of rescission, the applicable statute of limitations is three years. 15 U.S.C. § 1635(f) ("An obligor's right of rescission shall expire three years after the date of consummation of the transaction."). Unlike the statute of limitations provided in § 1640(e), the three-year right to rescind is a statutorily created right that expires three years after the loan. *Breach v. Ocwen Fed. Bank*, 523 U.S. 410, 417-18 (1998) ("Section 1635(f) . . . . talks not of a suit's commencement but of a right's duration, which it addresses in terms so straightforward as to render any limitations on the time for seeking a remedy superfluous.").

Plaintiff obtained the loan on October 11, 2004, and was provided with a Truth in Lending Disclosure Statement on that date. Plaintiff filed the instant lawsuit on July 30, 2009, over four years "after the date of consummation of the transaction." 15 U.S.C. § 1635(f). Her right to rescission has therefore expired, and the court will grant Defendant's motion for summary judgment as to Plaintiff's HOEPA and TILA claims for rescission.

---

However, the basis of Plaintiff's equitable tolling argument is that the disclosure was misleading, and this disclosure has been included as an exhibit. Plaintiff has not pointed to any additional facts supporting a finding of fraudulent concealment which would require further discovery, nor has Plaintiff filed a Rule 56(f) affidavit.

**B. State Law Claims - Counts II, IV, V, and VI**[6]

A district court "may decline to exercise supplemental jurisdiction [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). In particular, there is a "strong presumption in favor of dismissing supplemental claims" after a 12(b)(6) dismissal. *Id.* The two reasons for this presumption are: (1) "a 12(b)(6) dismissal usually comes early in the proceedings, when the court has not yet invested a great deal of time into resolution of the state claims" and (2) "a 12(b)(6) dismissal implies that the substance of the federal claims was somehow lacking." *Id.* However, this presumption can be overcome in "unusual circumstances." *Id.* (noting that the "Second Circuit has suggested that these 'unusual circumstances' must include 'some prejudice arising from relegating the case for trial in the state court.'" (quoting *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir. 1975)).

---

[6] Defendant argues that the MMBLSLA does not apply to it. (Def.'s Mot. at 10.) The MMBLSLA states: "This act does not apply to . . . [a] depository financial institution." Mich. Comp. Laws. § 445.1675(a). A "depository financial institution" is defined as "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, or credit union." *Id.* § 445.1651a(f). Defendant states that it is a federal savings bank. (Def.'s Mot. at 6.) Plaintiff has not offered any argument in response to Defendant's contention. Nevertheless, because the court is remanding all of the state-law claims to Wayne County Circuit Court, it will remand this claim as well.

The balance of considerations in this case point to remanding the state-law claims to Wayne County Circuit Court. Both of the reasons underlying the presumption of remand after a Rule 12(b)(6) dismissal of the federal claims are present here.[7] It is "early in the proceedings" as the case was originally filed on July 30, 2009 and was removed on August 24, 2009. *Id.* The court "has not yet invested a great deal of time into resolution of the state claims." *Id.* Two days after removal, the Defendant filed a motion to dismiss. On September 15, 2009, Plaintiff filed a response and an affidavit. Besides the motion and response, no other substantive documents have been filed. Nor have any conferences or hearings been held. Moreover, the federal claims were lacking because they were clearly barred by the statute of limitations. No "unusual circumstances" are present that would justify retaining jurisdiction over the remaining state-law claims. *Id.* Neither party will be prejudiced by remanding these claims to state court, and Defendant will be free to file its motion to dismiss or for summary judgment there. Accordingly, the court will remand Plaintiff's state-law claims to Wayne County Circuit Court.

## V.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's "Motion to Dismiss or Alternatively Motion for Summary Judgment" [Dkt. # 4] is GRANTED as to

---

[7] Even though the court applied the summary judgment standard, the posture of the motion was in essence a motion to dismiss under Rule 12(b)(6). Defendant had not yet filed an answer, nor was any discovery conducted. The motion was treated as one for summary judgment because both parties filed additional documents that were outside of the pleadings. *See* Fed. R. Civ. P. 12(d).

Plaintiff's federal claims (Counts I and III).  The remaining state law claims (Counts II, IV, V, and VI) are REMANDED to Wayne County Circuit Court.

s/Robert H. Cleland  
ROBERT H. CLELAND  
UNITED STATES DISTRICT JUDGE

Dated:  October 9, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 9, 2009, by electronic and/or ordinary mail.

s/Lisa G. Wagner  
Case Manager and Deputy Clerk  
(313) 234-5522